

# NUMBER 13-24-00518-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

GREGORY EUGENE LUDWIG,                                            Appellant,

v.

THE STATE OF TEXAS,                                              Appellee.

## ON APPEAL FROM THE 18TH DISTRICT COURT
## OF JOHNSON COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Chief Justice Tijerina and Justices West and Cron
Memorandum Opinion by Justice West**

Appellant Gregory Eugene Ludwig was convicted of two counts of indecency with a child by sexual contact, one for touching the genitals of the complainant (Count I) and one for touching the breast of the complainant (Count II). *See* TEX. PENAL CODE § 21.11(a)(1). Each offense is a second-degree felony. *Id.* § 21.11(d). After a bench trial, the trial court found appellant guilty of both counts, found two of the three felony

enhancement paragraphs true, and assessed punishment at life imprisonment for both counts, running concurrently. Appellant argues on appeal that the evidence was legally insufficient to support his convictions. We affirm.

## I. BACKGROUND[1]

Jane Brooks,[2] the complainant in this case, was seventeen years old at the time of trial. Jane testified that her mother was in and out of her life and explained that she and her younger sister, Ana, were primarily raised by their grandmother, Dora. Jane described living with Dora as "chaotic" because her grandmother's property had multiple houses and various adults lived on the property over the years who "did whatever they wanted." Jane explained that she witnessed "[a] lot of arguments, violence," and people doing drugs or drinking alcohol, including her mother and grandmother.

Jane knew appellant as Dora's boyfriend and a close friend of her uncle, who also lived on Dora's property. Jane testified that Dora dated appellant from 2014 or 2015 until 2017 or 2018, and appellant lived with her sometimes. Jane said she did not like appellant because he was mean to Dora. Other testimony revealed that appellant yelled or screamed at Dora and would do so in front of Jane and Ana.

Jane and Ana visited appellant at his RV a few times with Dora. Once, when Jane was about ten or eleven years old, appellant supervised her and Ana alone, and the two

---

[1] This case is before this Court on transfer from the Tenth Court of Appeals in Waco pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE § 73.001.

[2] To protect the identity of the child, we refer to her and her family by pseudonyms. *See* TEX. CONST. art. I, § 30(a)(1) (providing that a crime victim has "the right to be treated . . . with respect for the victim's dignity and privacy throughout the criminal justice process"); TEX. R. APP. P. 9.10(a)(3) (protecting the privacy of "any person who was a minor at the time the offense was committed" by designating the minors' names, dates of birth, and home address as "[s]ensitive data" requiring redaction).

spent the night in appellant's RV. The three of them shared a bed, and Jane and appellant slept on the outside and Ana slept in the middle. After Ana fell asleep, appellant wrapped his arm around them. Jane was awake and could feel appellant put his hand down her pants and underwear and start touching her vagina. Jane testified that the touching lasted about thirty seconds. Appellant then took his hand out of her pants, and he started to touch her breasts over her shirt and began "grabbing them." The touching of her breasts lasted ten or fifteen seconds. Jane said that the touching stopped when she rolled over towards the wall and "wrapped [her] arms around [her]self . . . and tried to go to sleep." She did not tell anyone about the incident because at that point, her uncle, grandmother, and her mother were friends with appellant and "doing drugs" with him.

Jane testified that the incident of abuse occurred during the summer before fourth grade. A photo taken the day after the incident was admitted into evidence. Jane explained that the day after the abuse, she and Ana were picked up from appellant's property, and they went to McDonalds for lunch. At McDonalds, a family friend took a photo of them. The photo was dated February 18, 2017. On cross examination, Jane conceded that February was not in the summer but would fall in the spring semester of her fourth-or fifth-grade year, and she did not know what grade she was in when the abuse occurred.

The State asked Jane whether there were "some allegations made against [appellant] in regards to your sister," and Jane responded yes. Jane was interviewed by the Children's Advocacy Center (CAC) following allegations of sexual abuse by Ana against appellant in 2019. Jane explained that the CAC interviewer asked Jane if she was

3

ever sexually abused, and Jane testified that she told the nurse no. She explained that because the allegations came from her sister, she wanted the investigation to focus on Ana and for Ana "to get the help that she needed." The investigation into Ana's sexual abuse allegations against appellant were later ruled out.

Jane's mother, Maddy, was arrested in December 2017 for a drug-related offense, and released from prison in May 2020. Upon her release, Maddy became more involved in Jane's life. According to Maddy's testimony, in April 2023, when Jane was fourteen or fifteen years old, Maddy found a vape pen in Jane's pocket. Maddy took Jane's phone and found a Snapchat photo from an adult man. Concerned about the Snapchat and the vape, Maddy took Jane to the police station. She explained that she "was hoping to scare [Jane] and show her that everything that had happened before and had been allowed before [wa]s no more." Maddy testified that, on the way to the station, she could tell that Jane seemed "troubled," so Maddy opened up about her own experience of growing up in an abusive household, including that she was sexually abused by her stepfather. Maddy said she previously told Jane about her abusive past a few different times, but it was at this point that Jane outcried about the sexual abuse from appellant. Maddy reported the allegations to the Johnson County Sheriff's Office, and Jane and Maddy made statements to law enforcement.

Later, Jane went to Cook Children's Medical Center for a forensic exam and interview. Kelli Brazzel, the sexual assault nurse examiner who examined Jane, read from her report of the exam at trial. She testified that Jane told her that appellant brought her and Ana to the RV to spend the night, and "[a]fter going to sleep, he put his hands in [her]

4

pants." Jane also told Brazzel that appellant touched her breasts and that the touching occurred under her clothes.

The trial court found appellant guilty on both counts and sentenced appellant as outlined above. This appeal ensued.

## II.    DISCUSSION

### A.    Standard of Review & Applicable Law

To satisfy constitutional due process requirements, a criminal conviction must be supported by sufficient evidence. *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). "Evidence is sufficient to support a criminal conviction if a rational [factfinder] could find each essential element of the offense beyond a reasonable doubt." *Stahmann v. State*, 602 S.W.3d 573, 577 (Tex. Crim. App. 2020) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The sufficiency of the evidence standard is generally the same for bench trials and jury trials. *Robinson v. State*, 466 S.W.3d 166, 172–73 (Tex. Crim. App. 2015); *Gonzalez v. State*, 706 S.W.3d 404, 409 (Tex. App.—Corpus Christi–Edinburg 2024, no pet.).

In a legal sufficiency review, we view the evidence in the light most favorable to the verdict and consider all of the admitted evidence, including any evidence that may have been improperly admitted. *Stahmann*, 602 S.W.3d at 577. We consider both direct and circumstantial evidence, as well as all reasonable inferences that may be drawn from the evidence and are not mere speculation. *Id.* We defer to the judge's role as the factfinder, which includes "resolving conflicts in the testimony, weighing the evidence, and

5

drawing reasonable inferences from basic facts." *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015).

Sufficiency is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Curlee v. State*, 620 S.W.3d 767, 778 (Tex. Crim. App. 2021) (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). A hypothetically correct charge "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.* (quoting *Malik*, 953 S.W.2d at 240). A hypothetically correct jury charge in this case would instruct the jury that appellant is guilty of indecency with a child as alleged in the indictment if he touched any part of Jane's genitals (Count I) and touched Jane's breasts (Count II), including touching through clothing, with the intent to arouse or gratify his sexual desire. *See* TEX. PENAL CODE § 21.11(a)(1), (c)(1).[3]

## B.    Analysis

Appellant argues that the evidence presented at trial was legally insufficient to support his convictions because "[t]he record contains no more than a 'modicum' of evidence that [he] committed the alleged offenses." Specifically, he contends that the evidence was insufficient because "[t]here were no other witnesses to the alleged criminal conduct, no physical evidence, no medical evidence, or any other evidence to support [Jane]'s allegations," and, according to appellant, Jane's testimony was contradictory,

---

[3] It is undisputed that, at the time of the alleged offenses, Jane was under the age of seventeen, which is an essential element of the offense. *See* TEX. PENAL CODE § 21.11(a).

Jane had a motive to fabricate the allegations, and "law enforcement did not properly investigate the case."

We disagree that the record contains no more than a "modicum" of evidence that appellant committed the offenses or that Jane's testimony was so conflicting that the trial court could not have found that the State proved all elements of the offenses beyond a reasonable doubt. Appellant does not dispute that Jane provided eyewitness testimony at trial which, if believed, would directly support each element of each count. *See Gonzalez Soto v. State*, 267 S.W.3d 327, 332 (Tex. App.—Corpus Christi–Edinburg 2008, no pet.) ("A conviction for indecency with a child can rest upon the testimony of a child sexual abuse victim alone."). And despite appellant's argument that the evidence is insufficient because there was no other evidence to support Jane's allegations, the Code of Criminal Procedure specifically provides that a conviction for a sexual offense against a child 17 years of age or younger "is supportable on the uncorroborated testimony of the victim" alone. TEX. CODE CRIM. PROC. ANN. art. 38.07(a), (b)(1); *Martinez v. State*, 178 S.W.3d 806, 814 (Tex. Crim. App. 2005); *Saldivar-Lopez v. State*, 676 S.W.3d 851, 859 (Tex. App.—Corpus Christi–Edinburg 2023, no pet.).

Appellant complains of inconsistencies in Jane's testimony. For example, Jane told the CAC that she had not been sexually abused during the investigation into Ana's sexual abuse allegations against appellant, and Jane testified that the abuse occurred the summer before fourth grade, but the abuse also occurred in February. Appellant also points to the fact that Jane testified that appellant touched her breasts over her clothes, but she told Brazzel that appellant touched her breasts under her clothes. However, the

7

factfinder "is the exclusive judge of the credibility of the witnesses and the weight to be given to their testimony." *Joseph v. State*, 897 S.W.2d 374, 376 (Tex. Crim. App. 1995). Weighing evidence and resolving conflicts in witness testimony is within the sole province of the factfinder. *See Murray*, 457 S.W.3d at 448; *Gonzalez*, 706 S.W.3d at 409. In a bench trial, as in this case, the trial court "is always free to selectively believe all or part of the testimony proffered and introduced by either side." *Jones v. State*, 984 S.W.2d 254, 257 (Tex. Crim. App. 1998). Moreover, courts give wide latitude to testimony given by child victims of sexual abuse, and the child victim is not expected to express herself at the same level of sophistication as an adult. *Gonzalez Soto*, 267 S.W.3d at 332. To the extent that Jane's statements on direct and cross examination may be conflicting, we must presume the court resolved the conflict consistent with the verdict. *See Murray*, 457 S.W.3d at 448.

The trial court found Jane to be a credible witness in this case, and viewing the evidence in the light most favorable to the verdict, we cannot conclude that the trial court was unreasonable for doing so. *See Stahmann*, 602 S.W.3d at 577. Further, appellant's defensive theory at trial was that he did not abuse Jane and that she was lying about the abuse to avoid getting in trouble with her mother. By rendering guilty verdicts, the trial court obviously rejected his defensive theory. *See Braughton v. State*, 569 S.W.3d 592, 611 (Tex. Crim. App. 2018) ("[B]y its implicit rejection of appellant's defenses in finding him guilty, the jury necessarily signaled its disbelief in this testimony as lacking in credibility . . . .").

8

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational factfinder could have found that appellant committed indecency with a child by contact as charged in Counts I and II beyond a reasonable doubt. We overrule appellant's sole issue.

### III. CONCLUSION

The trial court's judgment is affirmed.

JON WEST
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
2nd day of April, 2026.